**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **ANTOINE LAND, ALFY STIGLER and CHARLES JOHNSON, Individually, and on Behalf of All Others Similarly Situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:11-CV-00072** |
| **v.** | ) ) ) | **(JURY TRIAL DEMANDED)** |
| **SHORELINE MANAGEMENT & DEVELOPMENT, CORP., SAUNDRA HANSBROUGH, COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION
FOR FINAL APPROVAL OF CLASS SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs Charles ANTOINE LAND, ALFY STIGLER and CHARLES JOHNSON ("Named Plaintiffs"), and defendants COMCAST CORPORATION and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC ("Comcast") (collectively, the "Parties"), move this Court for final approval of the settlement (the "Settlement") preliminarily approved on April 18, 2012. (Docket No. 27)  As discussed below, the settlement provides for significant monetary relief, in the aggregate amount of $120,000.00.

This settlement is "fair, reasonable, and adequate" within the meaning of Federal Rule of Civil Procedure 23(e)(2).   The Settlement Class[1] has responded favorably. Notice of the Settlement was sent to 76 Class Members, and not a single Class Member objected to any aspect

---

[1] Where applicable, capitalized terms not otherwise defined in this Memorandum are as they are defined in the Class Action Settlement Agreement submitted with Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement.

of the Settlement Agreement (including the requests for Service Payments to the Named Plaintiffs and for attorneys' fees and costs). Class Counsel has conducted sufficient discovery to enable them to evaluate the claims and defenses in this action. The settlement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2005). Accordingly, the Settlement satisfies the Seventh Circuit's criteria for class action settlement approval.

## II.     STATEMENT OF FACTS

### A.     Factual and Procedural Background

As set forth in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement (Docket No. 25), the Named Plaintiffs and Class Members worked as technicians in the State of Illinois. Named Plaintiffs commenced the Litigation by filing a complaint on November 19, 2010, against Shoreline Management & Development, Corp., Saundra Hansbrough, (collectively, the "Shoreline Defendants") and Comcast (collectively, "Defendants"), asserting, *inter alia*, that members of the Settlement Class were misclassified as independent contractors for a period of time, not compensated for all hours worked, not paid overtime wages, and were subject to improper deductions, in violation of the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1, *et seq.* ("IWPCA") and the Illinois Employee Classification Act, 820 ILCS § 185/1, *et seq.* ("IECA");[2]

---

[2] In their initial complaint, the Named Plaintiffs also asserted claims for *quantum meruit*, unjust enrichment and breach of implied contract. The Named Plaintiffs' Amended Complaint asserted class claims under the IMWL, IWPCA and IECA only. The Named Plaintiffs also assert individual claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

The Parties engaged in significant discovery, including the exchange of Rule 26 disclosures, service of formal document requests and interrogatories, the exchange of thousands of pages of documents, and the depositions of five witnesses.[3]

The Parties ultimately agreed to mediate the Litigation. As a condition of mediation, the Parties agreed to exchange all information, data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiffs and putative class members. To that end, the parties exchanged comprehensive personnel records and related information, including technicians' dates of service, compensation data, and time data. Comcast and the Shoreline Defendants also provided Class Counsel with discovery documents, including company policies related to timekeeping and payment of overtime, and other compliance documents.

On June 20, 2011, the Parties mediated the Litigation in Chicago, Illinois, before retired United States District Court Judge Wayne R. Anderson. Although the parties did not reach a settlement at the mediation, the Parties continued negotiations directly and consulted with Judge Anderson in an attempt to resolve certain issues with respect to settlement. In August of 2011, after extensive settlement negotiations, the Named Plaintiffs and Comcast arrived at an agreement in principle to settle the claims against Comcast in the Litigation.

Comcast denies and continues to deny all of the allegations in the Litigation and continues to deny any and all liability and damages of any kind to anyone with respect to the alleged facts and causes of action in the Litigation. Comcast specifically denies that it ever had an employment relationship with the Named Plaintiffs or any of the Class Members. Comcast

---

[3] Defendant, Saundra Hansbrough was deposed in this case. The other four witnesses were deposed in connection with a related case, *Ellenbecker, et. al. v. North Star Cable Construction LLC, et.al.*, No. 09-cv-7293, also pending in the Northern District of Illinois before Judge Lindberg. The Parties have agreed that all depositions taken in connection with the *Ellenbecker* litigation would be admissible to the full extent permitted by the Federal Rules of Civil Procedure and this Court in the present Litigation.

also denies that litigation of this case as a class or collective action is appropriate had it been litigated. Comcast further reserves the right to argue that this case should be decertified as a class action in the event this settlement is not approved. Nonetheless, without admitting or conceding any liability, damages, or the propriety of class treatment whatsoever, Comcast has agreed to settle the Litigation on the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense and uncertainty of continuing the Litigation.

> **B.      The Court's Preliminary Approval Order**

On April 18, 2012, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Settlement. (Docket No. 25). On April 18, 2012, the Court granted preliminary approval of the Parties' proposed Settlement ("Preliminary Approval Order"). (Docket No. 27).

After entry of the Preliminary Approval Order, pursuant to the terms of the Settlement Agreement, the Parties directed the settlement claims administrator, Gilardi & Co., LLC, (the "Settlement Administrator") to issue service notice to the members of the Class by the means approved by the Court and agreed to by the Parties in the Settlement. [*See* Exhibit A - GILARDI DECL.].

Accordingly, on May 14, 2012, the Settlement Administrator mailed the Notice Regarding Proposed Settlement of Class Action ("Class Notice"), Claim and Consent to Joint Settlement Form ("Claim Form"), Election to Opt Out of Settlement Form, and Change of Name or Address Form (collectively "Notice Materials") to 76 Class Members. [*See* Exhibit A - GILARDI DECL.]. The Notice Materials informed Class Members of their right to file a Claim Form seeking a settlement payment; the consequences of not responding to the Notice Materials (not receiving any payment under the Settlement but being deemed to have released non-FLSA claims), and their right to exclude themselves from the Settlement.

The deadline to opt out of the settlement or submit a Claim Form was July 13, 2012. This deadline has now passed. As of July 6, 2012, 26 Class Members submitted timely Claim Forms, representing 34% of the Settlement Class, seeking payment from the $120,000.00 Maximum Settlement Amount. [*See* Exhibit A - GILARDI DECL.]

Approximately 1% of the Class (1 individual of the 76 Class Members who were mailed Notice Materials) timely requested exclusion from the Settlement. [*See* Exhibit A - GILARDI DECL.]. No Class Members objected to the Settlement. [*See* Exhibit A - GILARDI DECL.].

## III. THE PARTIES HAVE SATISFIED THE REQUIREMENTS OF RULE 23, THE FLSA AND THE COURT'S NOTICE REQUIREMENTS

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the Class Members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175.

On May 14, 2012 the Settlement Administrator mailed the Notice Materials to the 76 Class Members. [*See* Exhibit A - GILARDI DECL.]. 17 Notice Materials were returned as undeliverable. [*See* Exhibit A - GILARDI DECL.]. The Settlement Administrator performed advanced searches, known as "skip tracing," using the Class Members' names and previous addresses in its attempt to locate current addresses. If a new address was found, the Settlement Administrator re-mailed the Notice Materials. [*See* Exhibit A - GILARDI DECL.]. The Settlement Administrator successfully re-mailed 9 Notice Materials to a new-found address. [*See* Exhibit A - GILARDI DECL.]. After performing this "skip trace," eight (8) Notice Materials

ultimately remained undeliverable. [*See* Exhibit A - GILARDI DECL.]. The Notice Materials also informed the Class Members of the toll-free telephone number established by the Settlement Administrator that class members could call to request that a Notice Packet be mailed to them, or request to speak to a live operator. [*See* Exhibit A - GILARDI DECL.] The Parties' and the Settlement Administrator's extensive efforts to effectuate notice to the Class meet the requirements of Rule 23(c)(2)(B), the FLSA and this Court's notice requirements.

In addition, appropriate notice was provided to the requisite federal and state officials in the states in which a member of the Class resides in compliance with the Class Action Fairness Act of 2005. None of these federal or state officials filed an objection to the Settlement.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also, Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("the law strongly favors settlements…[and] [c]ourts should hospitably receive them"). To approve a proposed settlement of a class action under Rule 23, the Court must find that the proposed settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel*, 463 F.3d at 652. In making such a determination, courts in the Seventh Circuit consider the following factors: (1) the strength of plaintiffs' case, compared with the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199.

Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the

settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1149, n. 6 (N.D. Ill. 1997). When evaluated under these factors, the Parties' Settlement is fair, adequate, and reasonable.

### A.    Strength of Plaintiff's Case as Compared to the Amount of the Settlement and Allocation of the Settlement Payment.

One of the key considerations in evaluating a proposed settlement is the strength of a plaintiff's case as compared to the amount of the defendant's offer. *Isby*, 75 F.3d at 1199. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F. 2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiff's claims. *Id.*

The outcome of this litigation is far from certain. When the Parties agreed to settle, Class Counsel generally believed that many aspects of this case were strong, but that there was a clear risk that the Court might decertify Named Plaintiffs' claims as a class action. Even some of the stronger aspects of the case were subject to ultimate rejection. Bona fide disputes exist as to whether Named Plaintiffs and the Class Members were properly classified as independent contractors and whether Comcast exercised control over the Class Members' working conditions, such that Plaintiffs were jointly employed by the Shoreline Defendants and Comcast, making Comcast jointly liable for payment of overtime wages. Thus, as in any complex action, the Named Plaintiffs generally faced uncertainties. *Cf., West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement...." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). This case is no different in that there was a range of potential settlements that would have been reasonable.

The Settlement, though not providing a maximum value that might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker & Sons*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The consideration to be paid by Comcast is considerable. The Parties settled on $120,000.00 as a fair, adequate, and reasonable settlement, only after Plaintiffs' counsel reviewed thousands of pages of data provided by Comcast and the Shoreline Defendants.

Moreover, the method for allocating the Settlement is fair and reasonable. In determining the allocation, the parties considered the rate of pay for technicians, their dates of employment, and the information obtained via discovery. So that the settlement is fair, each Class Member's allocation is based on the amount of weeks he or she worked in a week during the settlement period. This weekly settlement payment for Class members is reasonable and equitable in light of the circumstances.

After the Administrative Costs, Class Counsel's attorneys' fees and costs, and the Named Plaintiff Service Payments have been paid out of the Settlement Fund, the Net Settlement

Amount will be distributed to Class Members who timely filed a Claim Form. The Parties anticipate that the Net Settlement Amount will be no less than $62,090.28.

The Settlement, though arguably not providing a maximum value that might be awarded at trial at a later date, provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause.

The proposed Settlement ensures that the Settlement Class Members will receive approximately $26.19 for each week that they worked for Defendants. *See* Exhibit B - Ryan Stephan Declaration. $26.19 per week is significant monetary relief, and for practical purposes, means that Settlement Class Members will receive a substantial portion of their claim's potential value.

Any unclaimed funds or un-awarded attorneys' fees, costs, or enhancements will be reallocated and distributed to Class Members who have filed claims, and no money will be returned to Comcast.

The Settlement thus ensures that the Class Members will receive significant monetary relief and, for practical purposes, means that those Class Members who actually asserted their rights and filed valid Claim Forms could possibly receive a substantial portion of their claims' potential value. Consequently, this factor supports a finding that the Settlement is fair, adequate, and reasonable. *See Mars Steele Corp.*, 834 F.2d at 682 (citations omitted).

**B.      Complexity, Length, and Expense of Further Litigation**

Avoiding the delay and risk of protracted litigation is another reason why counsel frequently recommends, and the courts approve, settlements. *See, e.g., Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation); *Marshall v. Holiday*

*Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). This consideration applies with full force to this case.

Further litigation would require motion practice and the risk, time and expense associated with trial. Couple this remaining discovery with the remaining motion practice and the costs of further litigation become considerable in terms of both time and money with uncertain results.

Under these circumstances, the benefits of a guaranteed recovery today, rather than an uncertain result years in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976).

### C.    There Is No Opposition To Settlement.

The Named Plaintiffs support the Settlement, as do Plaintiffs' counsel and Comcast. No Class Members filed objections to the Settlement. [*See* Exhibit A - GILARDI DECL.]. This indicates support for the Settlement and strongly favors its approval. *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001); *see also Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Strougo v. Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ('[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'").

In addition to the fact that no member of the Class objected, only one (1) member of the Class timely opted out of the Settlement. [*See* Exhibit A - GILARDI DECL.]. This, too, is a factor in favor of the final approval of the Settlement.

### D.    Opinion Of Counsel

The proposed Settlement is the product of arm's-length, non-collusive negotiations conducted by counsel experienced in class actions, and who are intimately familiar with the

- 10 -

strengths and weaknesses of the claims and defenses. Class Counsel exercised that experience and their intimate knowledge of the facts of the case and the legal issues facing the Named Plaintiffs and Class Members to conduct an independent analysis of the strengths, weaknesses and value of the claims, and the time, costs and expense of protracted litigation, discovery and appeals. [*See* Exhibit B - R. STEPHAN DECL.]. In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. [*See* Exhibit B - R. STEPHAN DECL.].

E.      **The Stage Of Proceedings And Discovery Complete.**

As explained above, this complex class action was resolved approximately 18 months after the complaint was filed. That 18 month period involved extensive research, analysis, protracted written and oral discovery, and motion practice. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement. [*See* Exhibit B - R. STEPHAN DECL.].

F.      **The Settlement Was The Result Of Arm's Length Negotiations, Without Any Hint Of Collusion.**

There is plainly no collusion or fraud with respect to this proposed Settlement, which was only reached after two months of intense negotiation. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> * * *
>
> The initial presumption of fairness of a class settlement may be established by showing:
>
> > a.      That the settlement has been arrived at by arm's-length bargaining;

    b.  That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and,

    c.  That the proponents of the settlement are counsel experienced in similar litigation.

Newberg §11.41 at 11-88, 11-91; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the Settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation and analysis. Therefore, the Court should find that an initial presumption of fairness exists to support preliminary approval of the Settlement.

    **G.**  **Stage of the Proceedings and the Amount of Discovery Completed**

   As explained above, this complex class action was resolved approximately 18 months after the complaint was filed. That one year period involved extensive research, analysis, protracted written and oral discovery, and motion practice. The stage of litigation has advanced to a state that the Plaintiffs' counsel could fairly and fully evaluate the value of the settlement.

   At the time of settlement conference and resulting Settlement, the litigation had progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of the litigation absent settlement. As a result, the Parties negotiated the Settlement with complete knowledge regarding the strengths and weaknesses of the case and the benefits of settlement.

   In sum, the foregoing demonstrates that the proposed settlement is fair and reasonable.

  **V.**  **THE SETTLEMENT CLASS SATISFIES ALL RULE 23 REQUIREMENTS.**

   The United States Supreme Court, federal Circuit Courts and district courts have recognized that the requirements for approving a settlement class are lower than those for a litigated class. *See, e.g. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 610 (1997) ("Confronted

with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial"); *Little Rock Sch. Dist. v. Pulaski Co. Spec. Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("Because settlement of a class action, like settlement of any litigation, is basically a bargained for exchange between litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public") (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980)). Here, the Settlement Class satisfies the requirements of Rule 23 for settlement purposes only.

### A.     The Settlement Class Satisfies Rule 23(a)'s Requirements.

To establish a class for settlement purposes, the action must satisfy the four prerequisites of Rule 23(a). Under Rule 23(a), "[a] plaintiff seeking to certify a class must initially establish that: (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.     Rule 23(a)(1) – "Numerosity."

The Seventh Circuit has held that as few as forty (40) class members are presumed to be sufficiently numerous. *See Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Here, there are 76 class members and, therefore, the Class satisfies Rule 23's numerosity requirement.

### 2.     Rule 23(a)(2) – "Commonality."

For a class to be certified under Rule 23, there must be questions of law and fact that are common to the Class.  Fed. R. Civ. P. 23(a)(2). Commonality requires that the claims of the plaintiffs and class members "depend upon a common contention…of such a nature that it is

capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2001). A common nucleus of operative facts is usually sufficient to satisfy the commonality requirement. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Courts generally have found that the commonality requirement is satisfied when one issue is common to all class members. *Marison A. ex rel. Forbes v. Guiliana*, 126 F.3d 372, 376 (2d Cir. 1997). "Not all factual or legal questions raised in a lawsuit need to be common so long as a single issue is common to all class members." *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 U.S. Dist. LEXIS 73502, at *10 (N.D. Ill. Oct. 1, 2007) (quotation omitted).

Here, the claims of the Named Plaintiffs and Class Members are premised on their alleged misclassification as independent contractors purportedly in violation of federal and state wage and hour law. Because the claims of the Class are based on the same conduct and common application of the same statutes, commonality is satisfied. *See Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

### 3. Rule 23(a)(3) – "Typicality."

Typicality exists where the claims of the class representatives and class members arise from the same practice or course of conduct and are based on the same legal theory. *Keele*, 149 F.3d at 595. This purpose of this requirement is to ensure that the claims of the class representatives and the claims of the class members have the same essential characteristics. *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

Here, the Named Plaintiffs' claims are typical of those of the class. Each Named Plaintiff and Class Member was a technician engaged by Shoreline to perform services for Comcast residential customers, was classified as an independent contractor, and was allegedly denied

overtime compensation and subject to unlawful deductions as a result thereof. Accordingly, the Named Plaintiffs' claims are typical of the claims of the Class within the meaning of Rule 23(a)(3) for purposes of settlement.

### 4. Rule 23(a)(4) – "Adequacy of Representation."

The adequacy of representation requirement is met when the representative parties fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Plaintiffs' attorneys are qualified, experienced and able to conduct the Litigation on behalf of the Class. [*See* Exhibit B - R. STEPHAN DECL.; *See* Exhibit C - STEPHAN ZOURAS, LLP FIRM RESUME]. Further, the Named Plaintiffs contend that they have no interests that are adverse to those of the other Class Members.

### B. The Settlement Class Satisfies All Rule 23(b)(3) Requirements.

The Settlement Class meets the requirements of Rule 23(b)(3) in that common questions of law affecting proposed Class Members predominate over questions affecting individual members and that class resolution is superior to other available methods for fairly and efficiency adjudicating the controversy.

### 1. Predominance.

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 594. Since the Court's Preliminary Approval Order, it remains undisputed that the Class meets the predominance standard because common questions of fact and law predominate over individual damage issues. Class Members were allegedly subject to the same misclassification as independent contractors and the same pay scheme. The class claims predominate over any individual claims members of the Class may otherwise wish to bring forward. Moreover, Comcast's defenses to this case are of class-wide application to the claims asserted.

2.      **Superiority.**

Superiority requires that the court "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (internal quotations omitted). As of July 6, 2012, 26 Class Members have filed timely Claim Forms to participate in the Settlement. [*See* Exhibit A - GILARDI DECL.]. Only one (1) individual has timely filed requests to opt-out of the Settlement.  [*See* Exhibit A - GILARDI DECL.]. No Class Member has filed an objection to the Settlement.  [*See* Exhibit A - GILARDI DECL.]. The number of Class Members opting into the Settlement, the low number of Class Members who requested exclusion from the Settlement, and the absence of objections to the Settlement demonstrate that there is significant interest in the collective resolution of these claims. Litigating this case in more than one forum would waste judicial resources and create the risk of conflicting outcomes.

## VI.    ENHANCEMENT PAYMENTS ARE APPROPRIATE.

In their Motion for Preliminary Approval, Named Plaintiffs informed the Court of their intention to seek Service Payments for the Named Plaintiffs, Antoine Land, Alfy Stigler and Charles Johnson.  Likewise, the Class Notice informed Class Members that Service Payments for the Named Plaintiffs would be requested and paid out of the Maximum Settlement Amount.  No member of the Class objected to the enhancement payments. Named Plaintiffs spent a substantial amount of time and effort in prosecuting this action.  They initiated the litigation, contributed to the complaint, answered written discovery, attended a one day mediation and communicated with class counsel on a regular basis.  As such, Mr. Land, Mr. Stigler and Mr. Johnson request that the Court grant their request for Service Payments of $2,500 each as the payments are fair and reasonable.

## VII. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (1) grant final approval of the Settlement Agreement; (2) find the Settlement fair, reasonable, adequate, and in the best interests of the Class Members; (3) approve Class Counsel's application for an award of attorneys' fees and costs; (4) approve the Named Plaintiffs' application for Service Payments; (5) approve the payment of reasonable Settlement Administration Costs; and (6) dismiss the Action and release and bar any further Released Claims by Class Members who did not opt out of the Settlement, and release and bar any further FLSA claims by Class Members who opted into the Settlement.

| ANTOINE LAND, ALFY STIGLER and<br>CHARLES JOHNSON | COMCAST CORPORATION and<br>COMCAST CABLE COMMUNICATIONS<br>MANAGEMENT, LLC, |
|---|---|
| By: */s/ Ryan F. Stephan*<br>    One of Their Attorneys | By: */s/ Stephanie L. Sweitzer*<br>    One of Their Attorneys |
| James B. Zouras<br>Ryan F. Stephan<br>STEPHAN ZOURAS, LLP<br>205 N. Michigan Avenue, Suite 2560<br>Chicago, Illinois 60601<br>Tel: 312.233.1550<br>Fax: 312.233.1560<br>jzouras@stephanzouras.com<br>rstephan@stephanzouras.com | Sari M. Alamuddin<br>Stephanie L. Sweitzer<br>Rita Srivastava<br>MORGAN LEWIS & BOCKIUS, LLP<br>77 W. Wacker Dr., Fifth Floor<br>Chicago, IL 60601<br>Tel: 312.324.1000<br>Fax: 312.324.1001<br>salamuddin@morganlewis.com<br>ssweitzer@morganlewis.com<br>rsrivastava@morganlewis.com |